**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**SABAL TRAIL TRANSMISSION, LLC,**

**Plaintiff,**

**vs.**

**+/- 1.76 ACRES OF LAND IN**
**SUWANNEE COUNTY FLORIDA,**
**JAMES R. VOSS, VIRGINIA A. VOSS,**
**MARK JAMES VOSS, BANK OF**
**AMERICA, N.A. AND UNKNOWN**
**OWNERS, IF ANY,**

**Defendants.**

**Case No.: 3:16-cv-313-BJD-JRK**
**Tract No(s): FL-SU-161.005, FL-SU-**
**162.000**

_____/

**ORDER**

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment

(Doc. 3) and the Motion for Preliminary Injunction for Immediate Possession (Doc. 4).

As it pertains to Defendant, Bank of America, N.A. ("Bank of America"), for the reasons

discussed herein, the Court grants both Motions.

**I.     Background**

On February 2, 2016, the Federal Energy Regulatory Commission ("FERC")

issued an order which, among other things, granted to Sabal Trail a Certificate of Public

Convenience and Necessity ("FERC Certificate") under the Natural Gas Act, 15 U.S.C. §

717f.  The FERC Certificate authorizes Sabal Trail to construct and operate the Sabal

Trail Project ("Project"), which is an interstate natural gas pipeline. Sabal Trail filed this

condemnation action against Defendants in order to acquire the Subject Easements

1

necessary to complete the Project. Sabal Trail filed the Motions at the same time.

On April 1, 2016, Sabal Trail effected service on Bank of America pursuant to Rule 71.1(d)(3)(A), Fed. R. Civ. P. (Doc. 13). To date, Bank of America has not filed an Answer to the Complaint or responses to the Motions. Bank of America did not appear at the hearing held by this Court on the Motions on May 25, 2016, despite due notice.

This Court makes the following findings of fact and conclusions of law:

## II.    Partial Summary Judgment – Federal Power to Condemn

### A.    Findings of Fact

1.    Sabal Trail requests that this Court enter an order of partial summary judgment establishing its right to condemn the Subject Easements.

2.    On February 2, 2016, FERC issued an Order granting Sabal Trail a FERC Certificate that authorizes Sabal Trail to construct and operate the Project.

3.    In order to construct and operate the Project in accordance with the FERC Certificate, Sabal Trail must acquire the Subject Easements from the larger parcel described in Exhibit 1 to the Complaint filed herein ("Owner's Larger Parcel"), which is located within the jurisdiction of this Court.

4.    As part of the certification process, Sabal Trail submitted and FERC approved "alignment sheets" showing the final alignment of the Project.

5.    Sabal Trail prepared the Subject Easements, as depicted in the Notice of Condemnation (Doc. 1-5), to conform to the FERC-approved alignment sheets. (Doc. 5, Herring Declaration at ¶13).

6.    Sabal Trail was unable to acquire the Subject Easements by contract. (*Id.*

at ¶16).

### B.    Conclusions of Law

7.      Congress enacted the Natural Gas Act to impose federal regulation upon

the interstate transportation and sale of natural gas for resale to the public for domestic,

commercial, industrial or any other use. As such, the Natural Gas Act applies to the

Project. The pertinent section of the Natural Gas Act provides as follows:

> When any holder of a certificate of public convenience and necessity
> cannot acquire by contract, or is unable to agree with the owner of
> property to the compensation to be paid for, the necessary right-of-way to
> construct, operate, and maintain a pipe line or pipe lines for the
> transportation of natural gas, and the necessary land or other property, in
> addition to right-of-way, for the location of compressor stations, pressure
> apparatus, or other stations or equipment necessary to the proper operation
> of such pipe line or pipe lines, it may acquire the same by the exercise of
> the right of eminent domain in the district court of the United States for
> the district in which such property may be located. . .

15 U.S.C. § 717f(h) (2016).

8.      A number of courts have held, and this Court agrees, the Natural Gas Act

authorizes a party to exercise the federal power of eminent domain to acquire property

necessary for an interstate natural gas pipeline project when: (1) the plaintiff is the holder

of a FERC Certificate authorizing a project, (2) FERC has determined that the property is

necessary for the project, and (3) the plaintiff is unable to acquire the property by

contract. *E.g., Columbia Gas Trans., LLC, v. 1.01 Acres, More or Less, in Penn Twp.,*

*York Cty., Pa.*, 768 F.3d 300, 304 (3d Cir. 2014); *Columbia Gas Trans., LLC, v. 0.85*

*Acres*, No. WDQ-14-2288, 2014 WL 4471541, at *3 (D. Md. Sept. 8, 2014); *Transcon.*

*Gas Pipe Line Co., LLC, v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-

00400-HEH, 2014 WL 4365476, at *4 (E.D. Va. Sept. 2, 2014).

9.      Under the pertinent section of the Natural Gas Act, Sabal Trail meets each condition precedent to condemn the Subject Easements. Sabal Trail holds a FERC Certificate authorizing the Project. FERC has determined that the Subject Easements are necessary for the Project. And Sabal Trail has been unable to acquire the Subject Easements by contract.

10.     District courts have limited jurisdiction in Natural Gas Act condemnation actions. The condemnation action "does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement." *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990). "The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope." *Steckman Ridge GP, LLC, v. An Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp., et al.*, Nos. 08-168, et al., 2008 WL 4346405, at *3 (W.D. Pa. Sept. 19, 2008) (citations omitted); *see also Columbia Gas Transmission Corp. v. An Easement to Construct, Operate & Maintain a 24-Inch Pipeline*, No. 5:07CV04009, 2008 WL 2439889, at *2 (W.D. Va. June 9, 2008).

11.     Thus, this Court finds that Sabal Trail is authorized by the Natural Gas Act to exercise the power of eminent domain and has the right to condemn the Subject Easements identified in the Notice of Condemnation (Doc. 1-5) and incorporated by reference.

**III.     Preliminary Injunction and Possession**

A.      **Findings of Fact**

12.     Sabal Trail also requests that the Court issue a preliminary injunction granting it immediate possession of the Subject Easements in order to begin pre-construction and construction activities.

13.     The FERC Certificate authorizes the construction and operation of the Project on its specified terms and conditions. (FERC Certificate, ¶ 88, p. 28). FERC found the Project is necessary, its "benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities," and "the public convenience and necessity requires approval of" the Project, as conditioned in the Order granting certification. (*Id.*).

14.     The purpose of the Project is to provide additional supplies of natural gas to Florida Power & Light Company and Duke Energy Florida, LLC, for their power generation needs and to the southeast region of the United States as a whole, by making additional supplies and new energy infrastructure available to support other regional power generators and the growing demand for natural gas. Upon completion, the Sabal Trail Project will be able to transport up to 1.1 billion cubic feet of natural gas per day. (FEIS at pp. 1-2 through 1-6; FERC Certificate at ¶ 4, p. 2).

15.     The Project involves the construction and operation of approximately 516.2 miles of natural gas pipeline and related facilities. (Doc. 6, Gonzales Declaration at ¶11). The pipeline facilities will consist of approximately 481.6 miles of mainline pipeline in Alabama, Georgia, and Florida; 13.1 miles of lateral pipeline (the Hunters Creek Line) in Florida; 21.5 miles of lateral pipeline (the Citrus County Line) in Florida;

five new natural gas-fired compressor stations; and appurtenant facilities. (*Id*.). Sabal

Trail also will construct and operate a facility in Osceola County, Florida, referred to as

the Central Florida Hub.

16.    The magnitude of the Project requires a complex and coordinated

construction process, with work activities being performed in sequential phases. (*Id.* at

¶13).  The Project consists of five pipeline construction spreads and three compressor

station construction spreads (a "spread" is a separate construction segment) across three

states. (*Id*.). The construction schedule in Florida is predicated upon construction of the

new pipeline facilities starting in particular places within the several spreads and

proceeding in a sequential manner. (*Id*. at ¶ 14). The process is comparable to an

assembly line, with specialized teams following each other down the right of way,

successively performing tasks such as clearing, grading, ditching, pipestringing, welding,

coating, pipe-laying, backfilling, testing, and land restoration. (*Id*.). Construction is

carefully planned so that crews and equipment proceed sequentially along the right of

way at a distance per day dependent on topography, road and stream crossings, and other

factors. (*Id*.).

17.    Sabal Trail must begin construction on each spread no later than June 21,

2016, in order to be completed by the May 1, 2017, in-service date. (*Id.* at ¶13).  Sabal

Trail must take immediate possession in order to perform certain pre-construction

activities. (*Id*. at ¶ 18).

18.    If construction begins on previously-acquired parcels but a construction

crew reaches a parcel that Sabal Trail does not yet possess, Sabal Trail would have only

two options, both of which entail significant delays and costs: Sabal Trail must either stop work on the Project altogether until the necessary easements can be acquired or try to "move around" the unresolved parcel, begin construction on the next parcel, and return at such time as the necessary easement can be obtained. (*Id.* at ¶¶ 23-24).

19.     Temporarily stopping construction upon reaching an unresolved parcel is not a tenable option, as it would delay completion of the Project indefinitely and cause Sabal Trail to miss the in-service date. (*Id.*). It also would result in significant financial consequences, as Sabal Trail would be liable to its contractors for delay costs resulting from work stoppage estimated to range between $20,333.00 and $123,333.00 per day. (*Id.* at ¶ 23).

20.     The "move around" option would disrupt the efficient, linear workflow and delay completion of the Project for at least as long as it takes to acquire the necessary interests, thereby substantially increasing the risk of missing the in-service date. Each such "move around" is also very costly. (*Id.* at ¶ 24). Although move-around costs are subject to various factors specific to each skipped area, such as the size of the property and the nearest FERC-approved access locations for the other accessible properties, such costs will likely range between $18,000.00 to $130,000.00. (*Id.*). If all of the construction crews are required to move around a particular parcel, the cost for that single move around would be approximately $720,000.00. (*Id.*).

21.     If Sabal Trail does not complete construction by the May 1, 2017, in-service date, it will be unable to timely transport price-competitive natural gas from Alabama to Florida to help meet the growing demand for natural gas by the electric

generation, distribution, and end use markets in Florida and the Southeast United States. (*Id.* at ¶25).

### B.    Conclusions of Law

22.    It is well established that granting immediate possession of property through a preliminary injunction is appropriate where a pipeline company holds a valid FERC Certificate, a court has entered an order establishing the pipeline company's right to condemn the necessary easements, and the pipeline company has satisfied the standard for injunctive relief. *See, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004) ("*Sage*"), *cert. denied*, 543 U.S. 978 (2004); *Alliance Pipeline, LP, v. 4.360 Acres*, 746 F.3d 362, 368-69 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 245 (2014); *Columbia Gas Trans., LLC, v. 101 Acres*, 768 F.3d 300, 315-16 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 245 (2014).

23.    In the Eleventh Circuit, as in other circuits, a party satisfies the standard for injunctive relief and is "entitled to a preliminary injunction if it show[s]: '(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest.'" *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015) (citations omitted).

24.    By granting Sabal Trail's Motion for Partial Summary Judgment, this court has determined Sabal Trail has the right to condemn the Subject Easements. Accordingly, there is a substantial likelihood that Sabal Trail will prevail on the merits.

25.     Sabal Trail will suffer irreparable injury if the requested preliminary injunction is not granted. The irreparable injury that would be suffered includes significant additional construction costs due to work suspensions, move-arounds, and/or specialty crew remobilization charges. Each disruption of the Project's orderly, linear workflow would force Sabal Trail to incur such added construction costs that could not be recouped and constitute irreparable injury. *See N. Border Pipeline Co. v. 64.111 Acres*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (holding irreparable harm would result from construction delays because increased construction costs could not be recovered from defendants); *Perryville Gas Storage, LLC, v. 40 Acres*, No. 3:11-cv-1635, 2011 WL 4943318, at *3 (W.D. La. Oct. 17, 2011) (stating increased costs if immediate possession was not granted would contravene public policy and "would be unrecoverable"); *Columbia Gas Trans.,* 2014 WL 4471541, at *6 (holding undue delay and costs in construction constituted irreparable harm); *Tenn. Gas Pipeline Co. v. 0.018 Acres*, No. 10-4465, 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010) (concluding gas company would suffer irreparable harm because "working around one small property is likely to [be] very difficult and result in large additional construction costs . . . [which] would not be able to be recovered"); *Guardian Pipeline, LLC, v. 295.49 Acres*, Nos. 08-C-0028, *et al.*, 2008 WL 1751358, at *22 (E.D. Wis. Apr. 11, 2008) (holding pipeline company would be irreparably harmed if forced to "skip over properties scattered at various locations along the route and then come back to them at a later time" because the company would "incur hundreds of thousands of dollars of expenses to move the large amount of material, heavy equipment, and personnel from property to property as they

become available [and] [n]one of these additional expenses could be recouped by [the company]").

26.     Finally, any delay in granting Sabal Trail possession of the Subject Easements will impede its ability to provide the needed energy delivery services already and conclusively deemed by FERC to be in the best interest of the public.

27.     The irreparable injury at stake for Sabal Trail outweighs any damage the proposed injunction may cause Defendants, which damage is reparable. As explained in *Sage*, the damage to Defendants is simply loss of possession that "would still be disturbed, albeit at a later time, if just compensation was determined first." 361 F.3d at 829; *see also Columbia Gas Trans. Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Trans. Pipeline*, No. 3:07cv00028, 2007 WL 2220530, at *4 (W.D. Va. July 31, 2007) ("[T]he only 'harm' to Defendants is that of compensation – an issue that will not change depending on whether [the court] grant[s] or den[ies] the injunction."). The relief that Sabal Trail seeks in the form of immediate possession will not harm Defendants' right to compensation. Any damages to Defendants must and will be remedied with money. Upon the grant of injunctive relief, there will remain the proceeding to determine just compensation.

28.     Granting Sabal Trail immediate possession of the Subject Easements in order to construct the Project in a timely manner would advance, not undermine, the public interest. The Natural Gas Act and the FERC Certificate support this conclusion. "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at

reasonable prices." *Sage*, 361 F.3d at 830. Before issuing a certificate of public convenience and necessity, FERC must determine that the project at issue furthers the goals of the Act and, thus, serves the public interest. *See id.* ("FERC conducted a careful analysis of the [pipeline project] and determined that the project will promote these congressional goals and serve the public interest.").

29.     Here, FERC determined the "[P]roject's benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities . . . [and] the public convenience and necessity requires approval of [the Project]." (FERC Certificate, ¶ 88, p. 28). Those findings are conclusive and binding on this Court and cannot be collaterally attacked. *See, e.g., E. Tenn. Nat. Gas*, 2006 WL 1133874, at *13 (noting the defendants could not ask the district court to "engage in an appellate review of the propriety of [the FERC-approved] project").

30.     Further, supplying natural gas for the generation of electricity and other energy needs advances the public interest. *See Sage*, 361 F.3d at 830 (finding pipeline project served public interest because it would make gas available to consumers and electric power plants, as well as help local communities to attract new business); *E. Tenn. Nat. Gas*, 2006 WL 1133874, at *14 ("[T]here is a substantial public interest at stake in this case – the need to capture and supply as much natural gas to the market as soon as possible."). The Sabal Trail Project will not only provide increased natural gas supplies to existing delivery points, but will also involve the construction of the Central Florida Hub, which will serve as a new natural gas trading point with the potential for increased

market competition that will result in economic benefit to end users. (FEIS, § 1 Introduction, 1.1.1.2, pp. 1-5).

31.    A delay of the Project's in-service date would cause injury to Sabal Trail's customers, particularly Florida Power & Light and Duke Energy Florida, as well as their customers – the numerous citizens and businesses that purchase electric power. Such negative impacts on a gas company's customers and the public consumers they serve support granting a preliminary injunction. *See Sage*, 361 F.3d at 829 (finding the gas company's "inability to satisfy [its] commitments would have negative impacts on its customers and the consumers they serve"). This factor counsels in favor of granting immediate possession.

32.    Additionally, the Project is expected to have a positive economic impact on Florida's economy. Sabal Trail anticipates that the Project will provide approximately 4,077 temporary construction jobs, 360 permanent operational jobs, and 977 indirect employment positions. (FEIS, § 3 Envtl. Analysis, Table 3.10-1, p. 177). Postponement of these benefits is not in the public interest. *See Sage*, 361 F.3d at 829 (noting construction delays would cause harm by hindering "economic development efforts").

33.    In order to satisfy the requirement under Rule 65(c) of the Federal Rules of Civil Procedure that a movant give security upon issuance of a preliminary injunction, Sabal Trail will deposit $6,000.00 into the Registry of the Court pursuant to the separate and concurrent order granting Plaintiff's Motion for a Preliminary Injunction as to the

other Defendants in this action.[1]

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

1.      Plaintiff's Motion for Partial Summary Judgment (Doc. 3) is GRANTED, and Sabal Trail has the right to condemn the Subject Easements.

2.      Plaintiff's Motion for Preliminary Injunction and Immediate Possession (Doc. 4) is GRANTED.

3.      Sabal Trail will deposit funds with the Registry of this Court in the amount of $6,000.00.[2]  The following shall occur:

a.      Sabal Trail shall have immediate access to, and possession of, the Subject Easements described in the Notice of Condemnation (Doc. 1-5) and incorporated herein; and

b.      Sabal Trail may immediately begin pre-installation activities so that construction-related activities can commence by June 21, 2016, for the purposes of constructing the Project.

4.      All pre-installation and construction-related activities shall be consistent with the FERC Certificate and all other applicable regulatory permits.

5.      If FERC approves a new alignment sheet that alters the route of the pipeline

---

[1]      Any appraised value that was reached by Sabal Trail's expert(s) has not been tested.  The defaulting defendant may still have the opportunity to challenge the appraisal at the valuation phase of the proceeding.

[2]      This is the same sum Plaintiff must deposit pursuant to the concurrent order as to the Defendants who entered a stipulation.  It is <u>not</u> in addition to that sum.

over Defendants' property, Sabal Trail shall promptly notify the Court.  Sabal Trail shall advise the Court on how to proceed, procedurally and substantively, if such an event occurs.

      **DONE** and **ORDERED** in Jacksonville, Florida, this 8th day of June, 2016.


TIMOTHY J. CORRIGAN
United States District Judge


Copies furnished to:
Counsel/Parties of Record